NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-1992

UNITED STATES OF AMERICA

v.

JAMEL E. EASTER,

Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Crim. No. 1-07-00153-002)
Honorable Sylvia H. Rambo, District Judge

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 9, 2010

BEFORE:  MCKEE, BARRY, and GREENBERG, Circuit Judges

(Filed: March 30,  2010)

OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter comes on before the Court on defendant Jamel Easter's (hereinafter

"Easter") appeal from a judgment of conviction and sentence entered on April 1, 2009,

following a jury trial in this crack cocaine and possession of a firearm in a drug

trafficking case. At a trial with Carlton L. Easter and Joseph Moore as co-defendants, a jury found Easter guilty of possession with intent to distribute 50 grams and more of crack cocaine in violation of 21 U.S.C. § 841(a) (Count II), possession of a firearm during, in relation to, and in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) (Count III), and conspiracy to possess with intent to distribute 50 grams and more of crack cocaine in violation of 21 U.S.C. § 846 (Count IV). The jury also found Easter guilty of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g) but on his post-trial motion the District Court set aside that conviction for reasons not germane to this appeal. After the Court denied Easter's motion on the remaining counts for a judgment of acquittal on the grounds of insufficiency of the evidence to support the convictions, it sentenced Easter to concurrent 168-month sentences on the two drug counts and a consecutive sentence of 60 months on the firearm count. In addition, the Court imposed concurrent five-year terms of supervised release on all three counts to follow the custodial terms.

Easter appeals, contending that the evidence was insufficient to sustain his conviction on the conspiracy charge and possession of firearm charges. He does not challenge his conviction on the possession of crack cocaine conviction. The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291.

The case arose from a reverse sting in which Easter attempted to purchase crack

2

cocaine from an informant working with the FBI. Though Easter originally told the informant that he wanted to purchase 18 ounces of crack, he subsequently told the informant that he needed only nine ounces. The informant notified the FBI of Easter's attempt to purchase the drug and the government arranged a sting to ensnare him. Easter drove to the site for the delivery in Harrisburg, Pennsylvania, in an automobile in which he had three passengers, Carlton Easter, Joseph Moore, and another male who has not been apprehended but who has been identified as Victor Patterson.

The informant was waiting at the site and got into the automobile but Carlton Easter then observed law enforcement officers in the area that he believed were conducting surveillance. When Carlton Easter told the automobile's other occupants of his observations, Easter moved the automobile to another location. Then Carlton Easter gave the informant $6,000 in cash and said that the drugs were for him.[1] After the informant with Moore's help counted the money, FBI and local officers attempted to arrest the automobile's occupants, but Easter initially frustrated that attempt by driving away. During the automobile flight Moore, who had possession of a .40 caliber Glock pistol, threw it to Easter who took control of it.

The automobile flight was not successful for as Easter drove the automobile away

---

[1] In his brief Easter, without citation to the record, indicated that "[h]e was the one who possessed the cash to purchase the narcotics." Appellant's br. at 13. But the informant testified that Carlton Easter handed him the money. We are uncertain of the original source of the money but it is clear that Carlton Easter was involved in its delivery.

3

it was damaged rendering it inoperable. Consequently, Easter, Moore, and Patterson left the automobile and continued to flee on foot. When they fled, Carlton Easter, who had been disabled in an earlier incident, remained in the automobile. While fleeing Easter hid the pistol and a bag that he was carrying in a ditch but the officers recovered the pistol and the bag which contained 83.7 grams of crack cocaine and a digital scale. The officers also searched Easter's automobile and found a bag containing 4.7 grams of crack, a box of sandwich bags, and some marijuana in its back seat. Though Patterson escaped, the pursuing officers arrested Easter and Moore who had sought refuge in an abandoned house. Other officers arrested Carlton Easter.

Easter gave a statement admitted into evidence acknowledging setting up the drug transaction but claiming to be acting on behalf of other persons and describing himself as a "middleman." However, he admitted having possession of the 83.7 grams of crack cocaine and the scale and he also admitted having received and disposed of the pistol.

The parties cite United States v. Pressler, 256 F.3d 144, 149 (3d Cir. 2001), and United States v. Gibbs, 190 F.3d 188, 197 (3d Cir. 1999), for the point that in a conspiracy case the government must establish that the co-conspirators had a unity of purpose, an intent to achieve a common good, and an agreement to work together toward that goal. Though Easter acknowledges that there were other persons in the automobile, he contends that only he engaged in the transaction with the informant and that the other occupants of the automobile, though charged as co-conspirators, simply were present but

4

were uninvolved in the drug transaction. Of course, that contention would be inconsistent with his claim that he was a mere middleman in the transaction unless he was acting for a person or persons not present during the transaction. In any event, he contends that the government's conspiracy case must collapse as it did not present proof that the other passengers named as conspirators were involved in the purchase.

We reject Easter's contention that the evidence could not support the conspiracy conviction. In assessing the adequacy of the evidence we review the evidence in the light most favorable to the government as the verdict winner and consider both direct and circumstantial evidence. See United States v. Wert-Ruiz, 228 F.3d 250, 256 (3d Cir. 2000). In considering the case we think that it is important to observe that Easter claimed to be a middleman in the transaction for the purchase of the crack cocaine from the informant. Effectively, therefore, Easter acknowledged that there was a conspiracy with respect to the purchase and possession of the crack, though he denies that his passengers were part of the conspiracy. Nevertheless, the evidence supported an inference that Easter's passengers were co-conspirators because when persons are going together in an automobile to the scene of a drug transaction a jury is not required to believe that some of them are simply along for the ride. Presence in an automobile at a drug purchase differs from presence in an office or residence where there is a far greater chance that the occupants may be there legitimately. After all, an automobile is not a bus and its occupants ordinarily have a specific purpose for being present in it.

5

In considering the adequacy of the evidence it is significant that Moore brought a weapon to the transaction, an understandable precaution because a drug transaction is a dangerous endeavor and protection for the participants in it is important to them. Thus, a jury could draw a reasonable inference that Moore was present to protect the transaction and was part of the conspiracy. Moreover, Carlton Easter's observations and comments with respect to the law enforcement officers supports a conclusion that he knew that the occupants of the automobile were engaged in a criminal activity, a conclusion reinforced beyond doubt when he handed the informant $6,000 for the purchase of the crack.

Easter also contends that the evidence does not support his conviction on the firearm conviction offense, principally because he came into possession of the firearm after it was apparent that there would not be a drug transaction and his possession was short lived. We reject this argument. Though it is true that Easter did not have the pistol for an extended time, this is not a case in which the pistol merely was handed from one person to another.[2] Quite to the contrary, the evidence showed that Easter was an active custodian of the pistol as he attempted, though unsuccessfully, to hide it. Thus, he really controlled the pistol and his possession of it was active not passive. Moreover, as we view the case Easter came into possession of the firearm during the drug transaction as it is reasonable to view the flight as part of the crime for purposes of 18 U.S.C. § 924(c) for

[2]We are not suggesting that such a fleeting possession would be inadequate to support a guilty verdict in a 18 U.S.C. § 924(c) case as that situation is not before us so we do not consider it.

6

surely the danger from the presence of a weapon at a drug transaction hardly is lessened during the criminals' flight from arresting officers.

For the foregoing reasons the judgment of conviction and sentence entered April 1, 2009, will be affirmed.